John H. Sutton, Tutor, *v.* John R. Mock, Administrator, and William Mock, Intervenor.

*Where a claim to a right in movable property, apparently belonging to a succession, is set up on the ground of an alleged partnership with the deceased, the proof of partnership must be clear and explicit.*

APPEAL from the District Court, Parish of Avoyelles, *Cooley, J.* *A. B. Irion, Waddill & Barbin,* for appellants. *Cullom & Thorpe,* Intervenor. *J. H. Farrer* and *H. Taylor,* for appellees.

The facts are stated in the opinion of the Court.

Taliaferro, J.  The plaintiff, in his representative capacity, brings this suit against the administrator of the estate of Elizabeth Mock, deceased, requiring him to show cause why certain property, found on the plantation and in the succession of the decedent, should not be placed on the inventory of the estate ; and prays that a more perfect inventory be made of the property of the succession ; complains that the administrator has sold seventeen bales of cotton, the property of the estate, and converted the proceeds to his own use ; that he is about to sell thirty bales more of the cotton of the estate in an illegal manner ; that he has converted to his own use various articles of personal property belonging to the estate, such as household and kitchen furniture, stock, etc. He prayed for and obtained a writ of sequestration, under which the sheriff seized and took into possession thirty-nine bales of cotton, three bales in the lint and one hundred and eight thousand pounds of cotton in the seed.  In an amended petition the plaintiff prays that the administrator be required to file a final account of his administration, alleges gross maladministration on the part of the administrator, the insolvency of both the administrator and his sureties, prays that the administrator be removed from office or required to give ample security, and that the cotton under seizure be partitioned among the heirs of the estate, etc.

The answer of the defendant contains a general denial.  Defendant avers that for several years past, previous to the death of his mother, Mrs. Elizabeth Mock, he resided upon the plantation with her, and that they carried on their planting operations in partnership, each party contributing teams, farming utensils, food, etc., and divided the crops in proportion to the number of laborers furnished by each partner; that the crop which was on the place at the decease of Mrs. Mock, he divided equally, giving one-half to her estate and taking the other half to himself, although he furnished eight hands and his mother only six in the production of the crop.  He avers that the mules and other property on the place at the decease of his mother, and not placed in the inventory, were his individual property.  He avers that by reason of the sequestration illegally sued out by the plaintiff, he has suffered damages to the amount

of one thousand dollars, expended in attorney's fees and other expenses, etc.

In this suit, William Mock, a brother of the administrator, intervenes claiming the cotton sequestered as his property, and prays that the sequestration be set aside; that the cotton seized be decreed to belong to him ; that damages be awarded to him for the annoyance and injury he has received from the proceedings of the plaintiff.

Upon these issues the parties went to trial in the lower Court. Judgment was rendered, decreeing the cotton in controversy to belong to the succession of Elizabeth Mock, deceased, and directing a supplementary inventory of the property of the succession to be made, and the cotton sequestered to be placed upon it, and that the administrator account for the same in the settlement of the succession of Elizabeth Mock, deceased.

From this judgment the intervenor appealed.

This somewhat entangled litigation, presents the too common case of the existence of improper feelings between relatives and co-heirs, arising from the division of a common patrimony.

As having a material bearing upon the consideration of this case, we shall advert to the habitations and the relative position of the plantation or field cultivated by Mrs. Elizabeth Mock, and the defendant jointly, and the one cultivated by the intervenor.

Upon a body of land lying upon the bayou DeGlaises, and owned by the estate of Mock, is situated a plantation which, for a number of years past, has been cultivated partly by J. R. Mock and his mother, up to the time of her decease, and partly by the intervenor. But it is clearly in proof that this cultivation is and has been, as far back as 1857 inclusive, entirely distinct, and in every respect disconnected. A cross fence, running from the bayou to the woods in the rear, has separated their fields and divided their agricultural operations. The plantation cultivated by J. R. Mock and his mother, his above, and that cultivated by William Mock, his below the cross fence. A gin, which has been used in common, is situated below the cross fence; and upon the place occupied and cultivated by William Mock. Upon the lower place, occupied by William Mock, in front of and near the gin, it is shown there stands a cotton-house in which, and in the gin, it has been the custom of William Mock to place his cotton as it was picked. It is likewise shown that upon the upper place, occupied by Mrs. Mock and J. R. Mock, there is a cotton-house and a carriage-house, with shades attached, which has been used for housing the cotton produced on that place. It is in proof that these parties have uniformly conducted their business separately ; that their laborers have never worked in common; that the crops produced have always been housed separately upon their respective places, and it is not shown that there has been, at any time, an intermixture of the cotton grown on the two plantations. It is shown that William Mock is a judicious planter, and that he formerly owned and worked a force upon the

place he occupied capable of producing from fifty to eighty bales of cotton per year.

Mrs. Elizabeth Mock died in the year 1863. J. R. Mock, the defendant, became the administrator of her estate. An inventory was made on the 24th of August of that year, and the property of the estate, except the land, was sold at probate sale on the 19th of November following. At this sale a lot of cotton in the seed, equal to twelve thousand pounds in the lint, was sold, and purchased by the intervenor.

The sheriff's inventory of the seizure, made under writ of sequestration, recites he "seized thirty-nine bales of packed cotton, three bales of lint cotton, not packed, and one hundred and eight thousand pounds of seed cotton, in four different lots." He states, in his testimony before the Court, that he seized thirty-nine bales of cotton, some of which were in front of the gin house, outside of the gin house fence, some inside of the gin house fence, and two bales under the gin. That he also seized about three bales of lint cotton in the gin house, and one hundred and eight thousand pounds of cotton in the seed, and that the cotton in the seed was in three different lots, one in the gin house, (amount not stated), another in a crib near the gin house, supposed to contain forty thousand pounds, and a third "above the residence of J. R. Mock," which is estimated to contain about sixty thousand pounds.

We find then that the sheriff sequestered cotton to the amount of about sixty-seven bales, found upon the premises occupied and cultivated by William Mock, and that the remainder sequestered, amounting to about sixty thousand pounds in the seed, was found on the place cultivated by Elizabeth Mock and J. R. Mock. It is sought to be established, and it was so decided by the judgment of the District Court, that all this cotton is property of the estate. The presumption that all property found in a succession belongs to it, does not, in our view, apply to the several lots of cotton found upon the premises cultivated by William Mock. We rather conclude from the drift of the evidence and the facts shown, that he is the owner. We find nothing in the record establishing a right in the estate to any of the cotton found upon William Mock's place. The other lot, found upon the other place, we think should be considered property of the estate, or rather what remains, after deducting from it the amount purchased at the probate sale by William Mock.

The decree rendered in this case by the Court à quo, seems not to have been predicated upon direct proof, showing ownership in the estate, but upon acts of the administrator and upon the acts and declarations of the intervenor, ignoring title in himself.

Although the proceedings of the defendant as administrator, in regard to the making of the inventory, were not regular in all respects, yet we are not satisfied that they were such as to warrant the conclusion that he was in bad faith. As to the declarations of William Mock, the intervenor, when considered in connection with the circumstances under which they

were made, we can scarcely deem them of such a damaging character as to be conclusive against him. The one to which the gravest import is attached, is the declaration to the witness Schuler, on the day the cotton was sequestered, that "*it* (*the cotton*) was the identical cotton made by the witness when he owned the Mock plantation in 1861." It is clear, from the context and from what immediately preceded, that the remark could only be applied to the cotton raised on the place cultivated by Elizabeth Mock, and not to *all the cotton* sequestered; for it is shown that he managed and made crops for himself on the place he occupied, from 1857 to 1865. His declaration to Schuler could have little effect against himself, and still less against the administrator.

With these views of the acts and declarations of the parties, and in the absence of any satisfactory proof adduced by the plaintiff, showing ownership in the estate, of the several lots of cotton found on the place occupied by the intervenor, and sequestered in this case, we render the following judgment :

It is therefore ordered, adjudged and decreed, that the judgment of the District Court be annulled, avoided and reversed, and the sequestration set aside. Of the cotton sequestered, it is adjudged and decreed that William Mock, the intervenor, is owner of thirty-nine pressed bales, the three bales more or less of lint cotton in the gin, and the lot of seed cotton in the cotton house in front of and near the gin, north of the cross fence; these several lots making, in the aggregate, about sixty-seven bales of the average weight of four hundred pounds. Of the lot of cotton in the seed, containing, by estimation, sixty thousand pounds, and being in the house on the premises formerly occupied by Mrs. Elizabeth Mock, it is decreed that the said intervenor is owner of a portion equivalent to twelve thousand pounds in the lint, being the amount of his purchase of cotton at the probate sale of the property of Elizabeth Mock's succession, made on the 19th of November, 1863. The residue of the last named lot of seed cotton is adjudged and decreed to belong to the succession of Elizabeth Mock, deceased, and it is ordered that the same be inventoried and administered as such, reserving to the defendant the right of sharing, by proper evidence, any individual right he may have in the said residue growing out of the partnership he alleges to have existed between himself and Mrs. Elizabeth Mock. It is further ordered and decreed, that all costs of these proceedings be paid by the succession.